IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

TIMOTHY DEWAYNE GULLETT  :
                         :
    Plaintiff,           :       CIVIL ACTION 11-0082-KD-M
                         :
v.                       :
                         :
ROGER GOODMAN, et al.,   :
                         :
    Defendants.          :

## REPORT AND RECOMMENDATION

Timothy Dewayne Gullett ("Gullett"), an Alabama prison

inmate proceeding *pro se* and *in forma pauperis*, filed a

Complaint (Doc. 1) under 42 U.S.C. §1983, which has been

referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B)

and Local Rule 72.2(c)(4).  For the reasons stated below, it is

recommended that the motion for summary judgment of Defendants[1]

Warden Roger Goodman ("Goodman"), Sergeant David Brown

("Brown"), and Officer Richard Waugh ("Waugh")[2] be granted, and

that Plaintiff's claims against these Defendants be dismissed.

---

[1] Defendants Officer King and Officer Barlows have not been
served nor made an appearance in this action, but for purposes
of this action all of Plaintiff's claims against these
Defendants are recommended to be dismissed upon the same
grounds, namely, that there is no constitutional violation.
Second, Plaintiff has not made any specific claims nor provided
specific facts in support thereof against Officer King and
Officer Barlows so that, in the alternative, they would also be
entitled to summary judgment in their favor on this ground.

[2] The Court notes that Plaintiff wrote Officer Walt on his
(Continued)

I.   SUMMARY OF FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

1.   From its review of the record, the Court summarizes the parties' allegations that are material to the issues addressed in this Report and Recommendation, and find the following as fact.

2.   At the time of Plaintiff's incident, he was a pretrial detainee[3] in the Dallas County Jail charged with attempted murder (Doc. 1, pp. 3, 5).  Prior to the incident, Plaintiff was moved to Quad 301 in the west side of the jail, but he complained that he did not want to be moved there because "[he] [did]n't get along with the people whear (sic) they w[ere] moveing (sic) [him]." (Doc. 1, p. 7).  Plaintiff did not specify who he told this information to (*see id.*).

---

Complaint form, but understands that the correct Defendant is Officer Waugh, as evidenced by his affidavit, the Special Report, Plaintiff's oppositions and other documents in this matter (Docs. 16-1, 16-17, 19, 20).

[3] The Court notes that the Plaintiff was a pre-trial detainee at the time of the incident and as of the filing of his Complaint, but this distinction is immaterial and the Eighth Amendment standard applicable to prisoners is applicable here as well.  *See Hathcock v. Armor Correctional Health Services, Inc.*, 186 Fed.Appx. 962, 963 n.1 (11th Cir. 2006).  ("Although the record is unclear as to whether Hathcock was a pre-trial detainee during the events, the distinction is immaterial. The Eighth Amendment standard, applicable to prisoners, and the Fourteenth Amendment standard, applicable to pre-trial detainees, are the same. *Marsh v. Butler County*, 268 F.3d 1014, 1024 n. 5 (11th Cir. 2001) (*en banc*); *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 (11th Cir. 1997)").

3.     On March 23, 2010,[4] Plaintiff saw another inmate steal

a screwdriver from a maintenance worker and wrote a note to a

guard to let the jail know that the screwdriver had been stolen

(Doc. 16-3, p. 7).  Plaintiff's note stated, as follows:

"Officer[,] CheChaw stole a screwdriver from a guy fixing the

lights." (Doc. 16-3, p. 10).  When the other inmates found out

that Plaintiff had alerted the jail about the stolen

screwdriver, they subsequently attacked Plaintiff (Doc. 1, p. 7;

Doc. 16-3, p. 7).  An unknown caller telephoned and told Sheriff

Harris Huffman that guards should go to Quad 301 because people

were attempting to kill Plaintiff (Doc. 16-1, pp. 1-2). Sherriff

Huffman radioed for Sergeant Lonnie Averette, Supervisor of the

second jail shift, to advise him of the situation (Doc. 16-1,

pp. 1-2).

4.     Officer Waugh heard the commotion coming from Quad

301, went to the area and was simultaneously radioed by Sheriff

Huffman about going to that area (Doc. 16-7, p. 2; Doc. 16-2, p.

2).  Officer Waugh saw that a fight was in progress between

Plaintiff and four other inmates (Doc. 16-7, p. 2).  Plaintiff

had a water cooler in his hand and at least one of the other

---

[4] Plaintiff incorrectly states the date of attack as March
20, 2010 but the remainder of the records shows that the attack
occurred on March 23, 2010 (*see* Docs. 16-1, 16-2, 16-3, 16-6,
16-7).

inmates had a piece of iron (Doc. 16-7, p. 2).  Officer Waugh

stopped the altercation, and removed Plaintiff from the area to

the front of the jail (Doc. 16-1, p. 2; Doc. 16-7, p. 2).

Officer Waugh was not aware prior to observing the fight that

there was a safety threat to Plaintiff, nor did Plaintiff

complain the inmates intended to harm him or specifically

request to be moved to a different location in the jail (Doc.

16-7, p. 2).

5.    Plaintiff's hand was visibly swollen as a result of

the attack, and Plaintiff was taken to the emergency room of

Vaughan Regional Medical Center in Selma, Alabama (Doc. 16-2, p.

2; Doc. 16-3, p. 8).  The radiology report shows that on March

23, 2010 Plaintiff's distal fourth metacarpal was fractured

(Doc. 16-4, p. 17).

6.    After the incident, Plaintiff requested that charges

be filed against the "Officers and inmates" to an unidentified

officer, and that unidentified officer told Plaintiff someone

would be sent out to discuss this matter, but no one came (Doc.

1, p. 8).

7.    Plaintiff received medical treatment multiple times to

recuperate from the injuries sustained from the March 23, 2010

incident (*see* Doc. 16-4).  Specifically, Plaintiff was seen at

Alabama Orthopaedic Specialists, P.A. on the following dates:

March 30, 2010; May 13, 2010; May 14, 2010; June 21, 2010;

September 25, 2010; and October 28, 2010 (Doc. 16-4, pp. 28, 34–35, 39, 46, 53, 55, 56).  Also, Plaintiff received physical therapy on the following dates: August 18, 2010; August 30, 2010;[5] September 2, 2010; September 16, 2010; September 21, 2010; September 23, 2010; September 28, 2010; September 30, 2010; November 15, 2010;[6] December 1, 2010;[7] December 16, 2010; December 22, 2010; and December 28, 2010 (Doc. 16-4, pp. 59, 64–71, 73-75).  The physical therapist noted that on the final visit on December 28, 2010, it was explained to Plaintiff that since Plaintiff's hand was not improving with the physical therapy sessions, that Plaintiff would be discharged, and Plaintiff was disappointed that he was being discharged (*id*.).  In regards to obtaining additional visits with medical personnel, Officer Waugh states that he and other jail officials made prisoner request forms for medical attention available to Plaintiff (Doc. 16-7, p. 2).  Plaintiff filled out three

[5] Plaintiff missed an August 24, 2010 physical therapy session due to jail staffing issues and was rescheduled for August 30, 2010 (Doc. 16-4, p. 61).  Plaintiff missed an August 26, 2010 appointment due to transportation issues (Doc. 16-4, p. 61).

[6] The physical therapy notes state that in four weeks Plaintiff would be discharged from physical therapy (Doc. 16-4, p. 70).

[7] The physical therapist notes state that Plaintiff's hand was no longer improving (Doc. 16-4, p. 71). Plaintiff did not come to the December 8, 2010 appointment (Doc. 16-4, p. 72).

requests forms on the following dates: on March 30, 2010 for
stronger medication "like Lortab"; on June 9, 2010 to see the
doctor; and August 25, 2010 to request that it be sure he is
taken to his physical therapy appointments (Doc. 16-2, pp. 10-
11). Plaintiff wants additional physical therapy despite the
fact that an individual at "the physical therapy pl[ace]" told
him that "[his] hand [wa]s not going [to] get any better" (Doc.
1, p. 9).

8. Plaintiff subsequently filed his Complaint on February
16, 2011 (*see* Doc. 1). In his Complaint, Plaintiff states that
Defendant Warden Goodman, Defendant Sergeant Brown, and
Defendant Officer Waugh failed to file charges against the
inmates who attacked Plaintiff,[8] and Plaintiff sues them for
"discrimination and pain and suf[f]er[ing]" for his injuries"
(Doc. 1, pp. 4, 5-6). Plaintiff alleges against unspecified

---

[8] The Court does not see where Defendant's failure to file
charges against the four inmate attackers gives rise to a
constitutional violation; therefore, it need not be addressed.
Disciplinary action was taken against the four inmates (Doc. 16-
1; Doc. 16-2, p. 8). More specifically, "filing of criminal
charges against inmates are made by the Dallas County
investigators and the Office of the District of Attorney for
Dallas County" and the warden, shift supervisors, and guards do
not make these decisions (Doc. 16-1, p. 6). Additionally, in
accord with jail policy, if Plaintiff desires to "bring charges
against the other inmates," he is "allowed an opportunity to be
brought before a magistrate who has the authority to issue
arrest warrants" (Doc. 16-1, p. 6). However, Plaintiff had not
made this specific type of request, and instead generally
requests charges be filed (*id*.).

"Officers" that they conspired for Plaintiff "to get jumped" (Doc. 1, pp. 7-8). Additionally, Plaintiff states that he needs more physical therapy for his hand (Doc. 1, p. 4). Plaintiff's request for relief is to be awarded $60,000.00 and for Defendants jobs to be "take[n] away" (Doc. 1, p. 6).

9. Defendants Warden Goodman, Sergeant David Brown, and Officer Richard Waugh filed a Special Report on September 30, 2011 along with related materials wherein they deny violating Plaintiff's constitutional rights and assert the defenses of absolute and qualified immunity (Docs. 16, 16-1 – 16-7).

10. Specifically, Defendant Brown states in his affidavit that he was not on the jail premises on March 23, 2010 at the time the fight occurred and that Plaintiff never made him aware nor did it come to his attention that there were threats or intended acts of violence made towards Plaintiff (Doc. 16-6, p. 2). Officer Waugh also was not aware of any threat or intended act of violence against Plaintiff, and Plaintiff did not complain to Defendant Waugh of such threats (Doc. 16-7, p. 2).

11. On October 3, 2011, Defendants Warden Goodman, Sergeant Brown, and Officer Waugh filed an Amended Answer (Doc. 17).

12. On October 4, 2010, the Court entered an Order converting the Special Report (Docs. 16) to a motion for summary judgment (Doc. 18).

13. Plaintiff filed two oppositions to the Special Report (Docs. 19, 20) and two oppositions to the Court's Order converting the Special Report to a motion for summary judgment (Docs. 21, 22). Plaintiff claims that he told Defendant Sergeant Brown that the inmates in Quad 301 were threatening him, were violent against other inmates, and were in a gang prior to the March 23, 2010 incident (Doc. 19). Also, Plaintiff states that the Defendants all know that he has requested additional treatment for his hand, and, in essence, his medical request forms have been ignored by them (Doc. 20). Also, Plaintiff specifically states that he filled out three request forms (Doc. 20).

14. The Complaint (Doc. 1), Special Report (Doc. 16), and Plaintiff's file oppositions (Docs. 19-22) are now before the Court.

## II. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. It is well-established that summary judgment is proper-consistent with Federal Rule of Civil Procedure 56(c)-"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a

judgment as a matter of law." *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986).

The Court must view the evidence produced by "the nonmoving

party, and all factual inferences arising from it, in the light

most favorable to" that party. *Barfield v. Brierton*, 883 F.2d

923, 934 (11th Cir. 1989). However, Rule 56(e) states that:

> If a party fails to properly support an assertion of
> fact or fails to properly address another party's
> assertion of fact as required by Rule 56(c), the court
> may:
>
> > (1) give an opportunity to properly support or
> > address the fact;
> > (2) consider the fact undisputed for purposes of
> > the motion;
> > (3) grant summary judgment if the motion and
> > supporting materials--including the facts
> > considered undisputed--show that the movant is
> > entitled to it; or
> > (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "[T]here is no issue for trial unless

there is sufficient evidence favoring the nonmoving party for a

jury to return a verdict for that party. . . . If the evidence

is merely colorable, . . . or is not significantly probative, .

. . summary judgment may be granted." *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations

omitted). "Summary judgment is mandated where a party 'fails to

make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

## III. DISCUSSION

As set out above, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for an alleged constitutional deprivation arising out of an attack by four other inmates (Doc. 1). Specifically, Plaintiff alleges that the Defendants violated his Eighth Amendment rights by: (1) failing to protect him from the attack by the four other inmates[9] and (2) being deliberately indifferent to his medical needs (*see* Doc. 1). Defendants deny that they violated Plaintiff's constitutional rights and further assert the defenses of absolute and qualified immunity (Docs. 16, 17).[10]

---

[9] Plaintiff claims that Defendant "set it up for [him] to get jumped" (Doc. 1, p. 7).

[10] It is not clear whether Plaintiff sues the Defendants in their official and individual capacities. State officials are entitled to absolute immunity from suit for damages in their official capacities. *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1278 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment). In addition, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Prior to the Supreme Court's decision in *Pearson v. Callahan*, 555 U.S. 223 (2009), the Court (Continued)

Section 1983 provides in pertinent part that:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof
> to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for
> redress. . . .

42 U.S.C. § 1983.  The Eighth Amendment provides that,

"[e]xcessive bail shall not be required, nor excessive fines

imposed, nor cruel and unusual punishments inflicted."  U.S.

Const. Amend. VIII.

## A.    Failure to Protect

The Eighth Amendment's proscription against cruel and

unusual punishment prohibits prison officials from exhibiting

---

followed the mandatory procedure of *Saucier v. Katz*, 533 U.S.
194, 201 (2001), overruled in part by *Pearson*, 555 U.S. at 236,
which required the Court to determine whether the plaintiff's
allegations, if true, established a constitutional violation
and, if the first step was satisfied, to determine whether the
right at issue was clearly established at the time of the
alleged misconduct.  While that procedure is now discretionary,
as opposed to mandatory, *see Pearson, id.*, the Court finds it
beneficial in this case.  With respect to Plaintiff's Eighth
Amendment claims related to his failure to protect claim in
connection to the March 23, 2010 attack and claim of deliberate
indifference for his medical need, the Court has found that
Plaintiff's allegations do not establish a constitutional
violation.  Therefore, "there is no necessity for further
inquiries concerning qualified immunity" with respect to those
claims.  *Saucier,* 533 U.S. at 201.

deliberate indifference to a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). In *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189 (1989), the Supreme Court summarized a state's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- e.g., food, clothing, shelter, medical care, and reasonable safety -- it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*DeShaney*, 489 U.S. at 199-200 (citations omitted). In order to prevail on his Eighth Amendment claim, Plaintiff must prove three elements: "(1) a condition of confinement that inflicted unnecessary pain or suffering, *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981), (2) the defendant's 'deliberate indifference' to that condition, *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991), and (3) causation, *Williams v. Bennett*, 689 F.2d 1370, 1389-90 (11th Cir. 1982)." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993).

In *Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994), the court described the first two elements as follows:

An Eighth Amendment claim is said to have two
components, an objective component, which inquires
whether the alleged wrongdoing was objectively harmful
enough to establish a constitutional violation, and a
subjective component, which inquires whether the
officials acted with a sufficiently culpable state of
mind.

*Id.* at 983 (citation omitted). The objective component of an

Eighth Amendment claim inquires whether the alleged wrongdoing

amounted to the infliction of "unnecessary pain or suffering

upon the prisoner." *LaMarca*, 995 F.2d at 1535. This standard

requires that the alleged deprivation be "objectively,

'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting

*Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective

standard "embodies broad and idealistic concepts of dignity,

civilized standards, humanity, and decency . . ., but must be

balanced against competing penological goals." *LaMarca*, 995

F.2d at 1535 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)

(internal quotation marks omitted)).

The subjective component of an Eighth Amendment claim

generally "inquires whether the officials acted with a

sufficiently culpable state of mind." *Sims*, 25 F.3d at 983-84

(citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). This

component "follows from the principle that 'only the unnecessary

and wanton infliction of pain implicates the Eighth Amendment.'"

*Farmer*, 511 U.S. at 834 (quotation and citation omitted). In

prison condition cases, the required state of mind for a

defendant is "deliberate indifference" to an inmate's health or safety. *Id*. (citations omitted). In defining "deliberate indifference," the Supreme Court in *Farmer* stated:

> We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official *knows of* and disregards an *excessive* risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837 (emphasis added). The court concluded that the "subjective recklessness" standard of criminal law is the test for "deliberate indifference" under the Eighth Amendment. *Id*. at 839-40.

There is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not. . . ." *Farmer*, 511 U.S. at 838. It is not enough that a plaintiff proves that the defendant should have known of the risk, but did not, as actual knowledge is the key. *See, e.g., Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996). A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," "a standard that incorporates due regard for prison officials' 'unenviable task of keeping dangerous men in safe custody under humane conditions.'" *Farmer*, 511 U.S. at 844-45 (citations omitted). "Whether one puts it in terms of duty or deliberate indifference, prison officials who act

14

reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id*. "[A] prison custodian is not the guarantor of a prisoner's safety." *Purcell*, 400 F.3d at 1321 (citations omitted). "[N]ot . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. As discussed above, a prison official's duty under the Eighth Amendment is to ensure "reasonable safety." *Farmer*, 511 U.S. at 844.

Having set forth the general legal principles relevant to Plaintiff's claims, the Court now turns to the application of those legal principles to the facts before the Court. In the present case, Plaintiff has not established that Defendants were deliberately indifferent. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Assuming Plaintiff may have told Defendants about not getting along with inmates in Quad 301, or even complained of threats, Plaintiff did not specify what *kind* of threats he was receiving, when they were made and who specifically was making these threats.[11] Plaintiff's statements were too vague, general,

---

[11] For example, threats made to Plaintiff could range from (Continued)

and conclusory to give Defendants proper notice for them to have the requisite knowledge of a real threat to Plaintiff's safety in order to be deemed deliberately indifferent.

More significantly, even if Plaintiff's statements are not deemed vague, general, and conclusory, there is no causal connection between his attack and any prior threatened or perceived general animosity towards him to give rise to an Eighth Amendment violation.[12] From the totality of the circumstances, the Court notes that Plaintiff was not actually harmed or attacked between the time he was moved into Quad 301 (when his apprehension began) until the time of the incident, undercutting the complained-of threat.[13] Significantly, the

_____

those of murdering him or some other serious physical harm to merely stealing his food or some other nuisance.

[12] In his Complaint, Plaintiff asserts he told unspecified "Officers" he did not want to be moved to Quad 301 because he didn't get along with the people in the west side of the jail and that the Defendants set him up to get jumped (Doc. 1, p. 7). In his opposition to the Special Report, Plaintiff states that he told Defendant Sergeant Brown that the inmates in Quad 301 were threatening him, were violent against other inmates, and were in a gang prior to the March 23, 2010 incident (Doc. 19).

[13] Plaintiff does not give the date he was moved to Quad 301 so it is clear how much time elapsed between his move to Quad 301 and March 23, 2010 (the date of attack). However, from the record, it appears that some amount of time passed between Plaintiff's move to Quad 301 and the date of the accident given that Plaintiff was able to watch a person conduct maintenance in the jail, and speak to Sergeant Brown on multiple occasions prior to the attack (see Doc. 19). Plaintiff states as follows: (Continued)

attack itself did not arise from any general animosity towards Plaintiff as claimed, but by Plaintiff's own action when he attempted to slip the note to a guard regarding the stolen screwdriver. The note itself does not include any comment about a perceived threat of attack for handing in the information or otherwise, which would be the reasonably expected action for Plaintiff to take if he truly perceived harm coming to him. Plaintiff himself explains in his written statement as part of the investigation file that because he handed in the note, he was attacked by the other inmates (Doc. 16-3, pp. 7-8).

In order for Plaintiff to prevail on his Eighth Amendment claim, Plaintiff must prove causation. *LaMarca*, 995 F.2d at 1535 (11th Cir. 1993). From the record before the Court, it appears that Plaintiff's action of slipping the note to a guard regarding the stolen screwdriver caused the inmates' reaction, which was to attack Plaintiff, and that Defendants had no prior notice of the attack. Once notified, Defendants responded to the incident. Therefore, Defendants are entitled to judgment as

---

"I, told Sgt. Brown **on different times** when ever I see him in the hall way and I be away from the other inmates. I told Sgt. David Brown that them 4 inmates that is listed that was in Cell block 301. I told Sgt. David Brown that them boys was trouble makers and they are acting as they was in a gang . . . and I had ask Sgt. Brown to move them…" (Doc. 19, p. 2).

a matter of law on Plaintiff's Eighth Amendment failure to
protect claim.

### B. Deliberate Indifference to Medical Need

"The Eighth Amendment's proscription of cruel and unusual
punishments prohibits prison officials from exhibiting
deliberate indifference to prisoners' serious medical needs."
*Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing
*Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  In *Sims v.
Mashburn*, 25 F.3d 980 (11th Cir. 1994), the Eleventh Circuit
delineated the objective and subjective portions of an Eighth
Amendment claim as follows:

> An Eighth Amendment claim is said to have two
> components, an objective component, which inquires
> whether the alleged wrongdoing was objectively harmful
> enough to establish a constitutional violation, and a
> subjective component, which inquires whether the
> officials acted with a sufficiently culpable state of
> mind.

*Sims*, 25 F.3d at 983 (citing *Hudson v. McMillian*, 503 U.S. 1, 8
(1992)).  To meet the objective element required to demonstrate
a denial of medical care in violation of the Eighth Amendment, a
plaintiff first must demonstrate the existence of an
"objectively serious medical need."  *Farrow v. West*, 320 F.3d
1235, 1243 (11th Cir. 2003).  A serious medical need is "'one
that has been diagnosed by a physician as mandating treatment or
one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention.'" *Id.* (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) overruled on other grounds in *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1031 n. 8 (11th Cir. 2001)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id.* (internal quotation marks and citation omitted).

In order to meet the subjective requirement of an Eighth Amendment denial of medical care claim, Plaintiff must demonstrate "deliberate indifference" to a serious medical need. *Farrow*, 320 F.3d at 1243. "Deliberate indifference" entails more than mere negligence. *Estelle*, 429 U.S. at 106; Farmer v. Brennan, 511 U.S. 825, 835 (1994). "When a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989).

> The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. 1970. In interpreting *Farmer* and *Estelle*, this Court explained in *McElligott* that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott*, 182 F.3d at 1255;

> *Taylor*, 221 F.3d at 1258 (stating that defendant must
> have subjective awareness of an "objectively serious
> need" and that his response must constitute "an
> objectively insufficient response to that need").

*Farrow*, 320 F.3d at 1245-46 (emphasis in original).

"Delay in access to medical attention can violate the

Eighth Amendment . . . when it is tantamount to unnecessary and

wanton infliction of pain." *Hill*, 40 F.3d at 1187 (internal

citations and quotation marks omitted). "Cases stating a

constitutional claim for immediate or emergency medical

attention have concerned medical needs that are obvious even to

a layperson because they involve life-threatening conditions or

situations where it is apparent that delay would detrimentally

exacerbate the medical problem." *Id*.

> The "seriousness" of an inmate's medical needs also
> may be decided by reference to the effect of delay in
> treatment. *Gaudreault*, 923 F.2d at 208; *Monmouth
> County*, 834 F.2d at 347. Where the delay results in
> an inmate's suffering "a life-long handicap or
> permanent loss, the medical need is considered
> serious." Id. An inmate who complains that delay in
> medical treatment rose to a constitutional violation
> must place verifying medical evidence in the record to
> establish the detrimental effect of delay in medical
> treatment to succeed. Further, we have held that
> "[t]he tolerable length of delay in providing medical
> attention depends on the nature of the medical need
> and the reason for the delay." *Harris v. Coweta
> County*, 21 F.3d 388, 393-94 (11th Cir. 1994) ...
> Consequently, delay in medical treatment must be
> interpreted in the context of the seriousness of the
> medical need, deciding whether the delay worsened the
> medical condition, and considering the reason for
> delay.

*Hill*, 40 F.3d at 1188-89 (emphasis removed) (footnotes omitted). Patients in the free world often experience similar delays when seeking treatment of non-life-threatening injuries or ailments. *Jackson v. Benjamin*, 2011 WL 1789992, *6 (S.D. Ala. Apr. 27, 2011).

Also, "[i]t is well-established that a difference in opinion or a disagreement between an inmate and prison officials as to what medical care is appropriate for his particular condition does not state a claim for deliberate indifference to medical needs." *Del Muro v. Federal Bureau of Prisons*, 2004 WL 1542216, *4 (N.D. Tex. 2004) (unpublished). As to "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995)(quoting Estelle, 429 U.S. at 107). Additionally, solely showing negligence or medical malpractice is "not sufficient" to constitute deliberate indifference. *See Mandel v. Doe*, 888 F. 2d 783, 787-88 (11th Cir. 1989).

Here, Plaintiff complains that he has not received additional physical therapy for his hand per his requests. However, according to the physical therapy records and as stated by Plaintiff in his Complaint, the physical therapist determined

that additional physical therapy would not be needed since Plaintiff was not benefiting nor progressing from the sessions (Doc. 16-4; Doc. 1). Plaintiff essentially differs in his opinion with that of the physical therapist as to whether additional therapy sessions are needed.[14]

The named Defendants in this action are not medical providers, and they did not make decisions about Plaintiff's medical need and course of treatment. Specifically, Defendants did not decide to end Plaintiff's physical therapy sessions. Rather, "[i]t is well-established that a difference in opinion or a disagreement between an inmate and prison officials as to what medical care is appropriate for his particular condition does not state a claim for deliberate indifference to medical needs." *Del Muro*, 2004 WL 1542216, *4 (N.D. Tex. 2004) (unpublished). Plaintiff's claim is a "classic example of matter for medical judgment." *See Adams*, 61 F.3d at 1545 (quotation and citation omitted). In this instance, Plaintiff's

---

[14] Plaintiff has not made a direct claim on any medical provider in this action, and he has not claimed that the named Defendants refused to take Plaintiff to obtain medical treatment as directed by a medical provider (*see* Doc. 1). The medical record reveals that Plaintiff had a few physical therapy sessions that were cancelled due to staffing and/or transportations issues, and a delay in the initial start-up of his physical therapy (*see* Doc. 16-4), but Plaintiff does not claim that this delay caused him irreparable harm (*see* Doc. 1).

physical therapist decided that the sessions were unnecessary and ended them (Doc. 16-4).

Also, Plaintiff states in his opposition that Defendants ignored his three requests for additional medical treatment (*see* Doc. 20), but the only forms filled out were the three requests made on March 30, 2010, June 9, 2010, and August 25, 2010, all prior to when his physical therapy ended (*see* Doc. 16-2, pp. 10-11).[15] Rather, these three request forms show that after each request, Plaintiff indeed received medical treatment. Therefore, Defendants were not deliberately indifferent to Plaintiff's medical need, and did not violate Plaintiff's constitutional rights.

## IV. CONCLUSION

Based on the foregoing, the Court concludes that Defendants Warden Roger Goodman ("Goodman"), Sergeant David Brown ("Brown"), Officer Richard Waugh ("Waugh") are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff. Accordingly, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment be granted (Doc. 16), that this action be dismissed with prejudice, and that judgment

---

[15] Plaintiff also states in his opposition that he requested to see a doctor for hand surgery, but such a request was not stated on the three request forms as he suggests.

be entered in favor of Defendants and against Plaintiff on all claims.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this 7th day of December, 2011.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE


**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1. *Objection*. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a
> magistrate judge in a dispositive matter, that is, a
> matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing
> a 'Statement of Objection to Magistrate Judge's
> Recommendation' within ten days[15] after being served
> with a copy of the recommendation, unless a different
> time is established by order. The statement of

---

[4] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).

objection shall specify those portions of the
recommendation to which objection is made and the
basis for the objection.  The objecting party shall
submit to the district judge, at the time of filing
the objection, a brief setting forth the party's
arguments that the magistrate judge's recommendation
should be reviewed *de novo* and a different disposition
made.  It is insufficient to submit only a copy of the
original brief submitted to the magistrate judge,
although a copy of the original brief may be submitted
or referred to and incorporated into the brief in
support of the objection.  Failure to submit a brief
in support of the objection may be deemed an
abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a
Court of Appeals; only the district judge's order or judgment
can be appealed.

2.      ***Transcript (applicable Where Proceedings Tape Recorded).***
Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the
Magistrate Judge finds that the tapes and original records in
this case are adequate for purposes of review.  Any party
planning to object to this recommendation, but unable to pay the
fee for a transcript, is advised that a judicial determination
that transcription is necessary is required before the United
States will pay the cost of the transcript.